IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| **Jayme Prokes**, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**American Federation of State, County, and Municipal Employees, Council No. 5; American Federation of State, County, and Municipal Employees, Council No. 5, Local 2440,** as representative of the class of all chapters and affiliates of the American Federation of State, County, and Municipal Employees, Council No. 5; **American Federation of State, County, and Municipal Employees**,<br><br>Defendants. | Case No. 0:18-cv-2384<br><br><br><br><br>**Plaintiffs' Class-Action Complaint** |

Jayme Prokes is a former member of the American Federation of State, County, and Municipal Employees, Council No. 5 (AFSCME Council 5). She brings this class action on behalf of herself and others similarly situated, seeking redress for the defendants' past and ongoing violations of her constitutionally protected rights. The defendants have violated Ms. Prokes's rights by establishing an "agency shop," where employees were compelled to pay money to AFSCME Council 5 and its affiliates as a condition of employment. And the defendants are continuing to violate Ms. Prokes's rights by taking union dues from her paycheck—even after she resigned her union membership and instructed the union to terminate all union-related payroll deductions.

Ms. Prokes sues on behalf of two separate classes. The first class consists of current or former members of AFSCME Council 5 or its affiliates who chose to remain in the union and pay full membership dues, but who would have quit the union and kept their money had they not been compelled to work in an unconstitutional agency shop. Before the Supreme Court's ruling in *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018), Ms. Prokes and her fellow class members were forced to choose between paying full membership dues to AFSCME Council 5, or resigning their union membership and paying a slightly reduced amount in "fair-share fees." *See* Minn. Stat. § 179A.06(3) (attached as Exhibit 1); Agreement Between the County of Scott and American Federation of State, County, and Municipal Employees, Council No. 5, Local 2440, article 4, § 1(B) (attached as Exhibit 2). Ms. Prokes reluctantly chose to remain in the union even though she opposed the union's collective-bargaining activities and its political and ideological advocacy, because resigning her membership would have saved very little money and would not have been worth the cost of losing her vote and whatever little influence she might have had in collective-bargaining matters. Ms. Prokes seeks classwide relief on behalf of all current and former AFSCME Council 5 members who retained their membership only because they would have been forced to pay "fair-share fees" had they quit, and she seeks restitution for each class member equal to the amount of the "fair-share fees" that they were forced to pay regardless of whether they retained or resigned their union membership.

The second class consists of current or former members of AFSCME Council 5 or its affiliates who have sought to resign their union memberships and terminate union-related payroll deductions — but who have been thwarted from doing so by the union or by their employer. On July 13, 2018, Ms. Prokes sent a letter to AFSCME's headquarters by certified mail, return receipt requested, which stated that she was resigning from the union "effective immediately." *See* Exhibit 3. The return receipt indicates that AFSCME Council 5 received this letter on July 16, 2018. *See* Exhibit

4. Nevertheless, AFSCME Council 5 *continues* to take union dues from Ms. Prokes's paycheck, because it insists that Ms. Prokes cannot resign from the union and halt the payment of membership dues unless she resigns during a 15-day "opt-out window" that runs from January 3, 2019, through January 18, 2019. So the union intends to continue garnishing Ms. Prokes's wages—notwithstanding her resignation from the union and her clear and explicit instruction to the union to cease taking money from her paycheck—until Ms. Prokes asks the union to stop on some date that falls in between January 3, 2019, and January 18, 2019. Ms. Prokes seeks classwide relief for all employees who remained subject to union-related payroll deductions after announcing their resignation from the union, and she seeks damages and injunctive relief on behalf of this class.

## JURISDICTION AND VENUE

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367.

2. Venue is proper because a substantial part of the events giving rise to the claims occurred in the district of Minnesota. *See* 28 U.S.C. § 1391(b)(2).

3. Because the claims related to Ms. Prokes arose in Scott County and Ms. Prokes resides in Le Sueur County, assignment to the Third or Fourth Division is proper.

## PARTIES

4. Plaintiff Jayme Prokes resides in Le Sueur County, Minnesota.

5. Defendant American Federation of State, County, and Municipal Employees, Council No. 5 (AFSCME Council 5) is a labor union whose headquarters are located at 300 Hardman Avenue South, South St. Paul, Minnesota 55075

6. Defendant American Federation of State, County, and Municipal Employees, Council No. 5, Local 2440 (Local 2440) is a local union chapter affiliated with

AFSCME Council 5. Its offices are located at 200 4th Avenue West Shakopee, Minnesota 55379. It is sued as representative of the class of all chapters and affiliates of AFSCME Council 5.

7. Defendant American Federation of State, County, and Municipal Employees (AFSCME) is a labor union whose headquarters are located at 1625 L Street, NW, Washington, D.C. 20036-5687. AFSCME is affiliated with AFSCME Council 5.

## CLAIM NO. 1—UNCONSTITUTIONAL AGENCY SHOP

8. Plaintiff Jayme Prokes is a Financial Assistance Specialist for Scott County Health and Human Services. She has held this job since April 16, 2018.

9. Ms. Prokes started her employment with Scott County in an "agency shop," where she was forced to either join AFSCME Council 5 and Local 2440 and pay full membership dues, or else pay "fair-share fees" to those unions as a condition of her employment. *See* Agreement Between the County of Scott and American Federation of State, County, and Municipal Employees, Council No. 5, Local 2440, article 4, § 1(B) (attached as Exhibit 2).

10. The law of Minnesota authorized AFSCME Council 5 and its affiliates to collect payments from non-union members at the time of Ms. Prokes's employment. *See* Minn. Stat. § 179A.06(3) (attached to the complaint as Exhibit 1).

11. Ms. Prokes opposed and continues to oppose AFSCME Council 5's political advocacy and collective-bargaining activities. Nevertheless, she chose to remain in the union because she would have been forced to pay "fair-share fees" had she resigned, and the difference in money between the full membership dues and the "fair-share fees" would not have been worth the loss of her vote and whatever little influence she might have been able to assert in collective-bargaining matters.

12. The compelled subsidy that Ms. Prokes and her fellow employees were forced to pay to AFSCME Council 5 and its affiliates violated their constitutional

rights—regardless of whether they chose to remain in the union and pay full membership dues (as Ms. Prokes did) or resign their membership and pay "fair-share fees" (as others had done).

13. AFSCME Council 5 and its affiliates were acting under color of state law by imposing these mandatory union payments on Ms. Prokes and her fellow employees. *See* Minn. Stat. § 179A.06(3); *Lugar v. Edmondson Oil Co. Inc.*, 457 U.S. 922 (1982).

14. AFSCME Council 5 and its affiliates have committed the torts of conversion and trespass to chattels by confiscating money belonging to Ms. Prokes against her will. AFSCME Council 5 and its affiliates are therefore liable to Ms. York in tort and in an action for replevin. AFSCME Council 5 and its affiliates cannot defend their tortious behavior by relying on Minn. Stat. § 179A.06(3), because the statute is unconstitutional and unconstitutional statutes cannot confer immunity on tortious conduct. Nor can AFSCME Council 5 and its affiliates defend themselves by claiming that Ms. Prokes "consented" to the payment of full membership dues. Any public employee who agreed to union membership before *Janus* did so while working in an unconstitutional agency shop, which *compelled* them to pay at least the amount of "fair-share fees" whether they joined the union or not. A pre-*Janus* public employee who agreed to union membership consented to pay only the *difference* between full union dues and the compulsory "representation fees" that would have been imposed had they refused to join.

15. Ms. Prokes is entitled to a refund in the amount of the "fair-share fees" that she would have been forced to pay regardless of whether she retained or resigned her union membership.

16. Ms. Prokes is suing on behalf of all current and former public employees in Minnesota who: (1) are or were members of AFSCME Council 5 and its affiliates; and (2) would have quit the union (or quit the union sooner than they did) had they not

been compelled to work in an unconstitutional agency shop. The class includes anyone who has ever fallen within this definition, including former and retired public employees, and it includes anyone who comes within the class definition at any time before the conclusion of this action.

17. Ms. Prokes has Article III standing to bring these claims. She has suffered injury in fact because she was forced to pay money to AFSCME Council 5 and its affiliates as a condition of her employment. The injury was caused by the unconstitutional behavior of the defendants, and the injury will be redressed by a refund of the money that the union unconstitutionally extracted from Ms. Prokes and her fellow class members.

### CLAIM NO. 2—UNCONSTITUTIONAL GARNISHMENT OF WAGES POST-*JANUS*

18. After the Supreme Court's ruling in *Janus*, Ms. Prokes resigned her union membership and demanded that the union stop all union-related payroll deductions.

19. On July 13, 2018, Ms. Prokes sent a resignation letter to AFSCME Council 5's headquarters by certified mail, return receipt requested. The letter stated:

> Effective immediately, I resign membership in all levels of the union.
>
> As a nonmember, I request that you immediately cease deducting all dues, fees, and political contributions from my wages, as is my constitutional right in light of the U.S. Supreme Court's ruling in *Janus v. AFSCME*. . . .
>
> Furthermore, I request that you promptly provide me with a copy of any dues deduction authorization—written, electronic, or oral—the union has on file for me.
>
> I trust that you will act promptly to properly observe my constitutional rights.

*See* Exhibit 3. An unsigned copy of Ms. Prokes's resignation is attached as Exhibit 3 to this complaint.

20. The return receipt indicates that the union received Ms. Prokes's resignation letter on July 16, 2018. *See* Exhibit 4.

21. The USPS tracking app on Ms. Prokes's iPhone shows that the post office delivered Ms. Prokes's resignation letter to union headquarters on July 16, 2018, at 11:26 A.M. central time. *See* Exhibit 5.

22. The union refused to honor Ms. Prokes's resignation letter or instructions. When Ms. Prokes received her next paycheck on July 27, 2018, the union was still taking membership dues from her wages. *See* Exhibit 6.

23. On July 27, 2018, Ms. Prokes e-mailed Lisa Fettig at the Payroll Department of Scott County, and asked why the county was continuing to deduct union dues from her paycheck. Ms. Prokes attached a copy of the resignation letter that she had sent to the union by certified mail, and she informed Ms. Fettig that her resignation letter had been mailed to AFSCME Council 5 "approximately 2 weeks ago." *See* Exhibit 7.

24. Ms. Fettig then e-mailed Ms. Prokes and said: "Jayme—We have not received anything yet. I think you should call them. The last person that sent a similar letter to your called them and within a few days we had a e-mail advising us to the stop the deduction." *See* Exhibit 7.

25. On July 30, 2018, union representative Kurt Erickson called Ms. Prokes to explain why the union was continuing to take membership dues from her paycheck. Mr. Erickson informed Ms. Prokes that she had signed a "Maintenance of Dues" agreement in 2016—and he claimed that this agreement forbids Ms. Prokes to resign her membership and stop the payment of dues unless she does so during a 15-day "opt-out window" that runs from January 3, 2019, through January 18, 2019.

26. In 2016, when Ms. Prokes supposedly signed this "Maintenance of Dues" agreement, she was employed by the Minnesota Department of Corrections under a collective-bargaining agreement negotiated by AFSCME Council 5.

27. Mr. Erickson told Ms. Prokes that the "Maintenance of Dues" agreement that she signed while working for the Minnesota Department of Corrections carried over to her new job at Scott County Health and Human Services—even though Ms. Prokes had quit that job nearly two years ago and worked at several non-union jobs before starting work at with Scott County Health and Human Services on April 16, 2018.

28. The union's refusal to honor Ms. Prokes's resignation letter and its continued garnishment of Ms. Prokes's wages violate the Speech Clause and the Supreme Court's ruling in *Janus*. *Janus* holds that public-employee unions are forbidden to collect money from a nonmember's wages unless the employee "clearly and affirmatively consent[s] before any money is taken." *Janus*, 138 S. Ct. at 2486. Ms. Prokes ceased to be a member of AFSCME Council 5 and its affiliates when the union received her resignation letter on July 16, 2018. Now that Ms. Prokes has quit the union, the union is forbidden to touch her paycheck unless it secures Ms. Prokes's clear, affirmative, and freely given consent in advance.

29. Ms. Prokes has never provided "clear and affirmative consent" to the payment of full membership dues. When Ms. Prokes agreed to become a union member before *Janus*, she did so while working in an unconstitutional agency shop, where she was compelled to pay *at least* the amount of "fair-share fees" to the union regardless of whether she joined the union. By joining the union, Ms. Prokes consented to pay only the *difference* between full membership dues and the "fair-share fees" that she would have been forced to pay as a non-union member. Ms. Prokes's agreement to pay that difference does not represent "consent" to pay full membership dues in a right-to-work situation.

30. The defendants have committed the torts of conversion and trespass to chattels by taking and redirecting money from Ms. Prokes's paycheck without securing

her clear, affirmative, and freely given consent—and they are continuing to commit those torts by taking union membership dues from Ms. Prokes against her wishes.

31. The union's defiance of Ms. Prokes's explicit, post-*Janus* instructions to stop taking money from her paycheck exposes the union to punitive damages.

32. Any "Maintenance of Dues" agreement that forbids public employees to quit the union and terminate financial support unless they do so during a union-defined "opt-out window" is unenforceable and void. A public employee has the constitutional right to revoke his or her union membership and union-related payments at any time, and this right cannot be limited by a union-imposed "opt-out window." Any public-employee union that requires its members to waive or limit their constitutional rights as a condition of union membership is creating an illegal tie-in arrangement that misuses the monopoly power that the union has been granted by the State. A public-employee union may no more require its members to waive or limit their *Janus* rights than it may require them to waive or limit their right to practice their religion or their right to keep and bear arms.

33. In addition, any "Maintenance of Dues" agreement that was signed before *Janus* is not a valid agreement to continue paying membership dues in a right-to-work environment. When Ms. Prokes signed this supposed "Maintenance of Dues" agreement, she did so while working in an unconstitutional agency shop, which *compelled* her to pay at least the amount of "fair-share fees" to the union whether she joined or not. Ms. Prokes's pre-*Janus* consent to union membership—and her supposed consent to this "Maintenance of Dues" agreement that was imposed as a condition of union membership—was made under unconstitutional compulsion, and the union never secured Ms. Prokes's freely given consent to pay full membership dues in a right-to-work setting where employees have the right to withhold *all* financial support from the union.

34. Finally, the "Maintenance of Dues" agreement that Ms. Prokes signed is invalid and unenforceable because Ms. Prokes was compelled to sign it as a condition of her employment with the Minnesota Department of Corrections.

*35.* The collective-bargaining agreement negotiated between Scott County and Local 2440 requires the county to deduct union dues and fair-share fees from the paychecks of its employees, and it provides that the union shall "certify" to the county "the current amounts of regular dues to be withheld." *See* Agreement Between The County of Scott and American Federation of State, County, And Municipal Employees, Council No. 5, Local 2440, article 4, § 1(D) (attached as Exhibit 2). This provision is unconstitutional, as it requires Scott County to deduct union dues from the paychecks of employees upon the union's request and without regard to whether the employee has "clearly and affirmatively consented" to these payroll deductions. When a public employer learns that an employee has resigned from the union, it must immediately halt union-related payroll deductions regardless of any provision in a collective-bargaining agreement. *See Janus*, 138 S. Ct. at 2486.

36. Ms. Prokes is suing on behalf of all current and former members of AFSCME Council 5 and its affiliates who: (1) attempted to resign their union membership at any time before or after *Janus*; and (2) had union membership dues taken from their paychecks after communicating their desire to resign. The class includes anyone who has ever fallen within this definition, including former and retired public employees, and it includes anyone who comes within the class definition at any time before the conclusion of this action.

37. Ms. Prokes has Article III standing to bring these claims. She has suffered injury in fact because the union and her employer have taken money from her paycheck after she informed them that she had resigned her union membership—and the union has told Ms. Prokes that it intends to keep taking membership dues in defiance of her instructions. These injuries are caused by the unlawful behavior of the

defendants, and the injury will be redressed by a refund of money that the union unlawfully took from Ms. Prokes and her fellow class members, as well as an injunction that bars the collection of membership dues from any employee who has communicated their desire to resign.

## CAUSES OF ACTION

38. Ms. Prokes is suing the defendants under 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, each of which supplies a cause of action for the individual and class-wide relief that they are requesting.

39. Ms. Prokes is also suing the defendants under the state-law torts of conversion, trespass to chattels, replevin, and any other state-law cause of action that offers relief for this unlawful seizure of her personal property. Ms. Prokes invokes the supplemental jurisdiction of this court over these pendent state-law claims. *See* 28 U.S.C. § 1367.

## DEMAND FOR RELIEF—CLAIM NO. 1

40. Ms. Prokes respectfully requests that the court:

   a. certify a class of all current and former members of AFSCME Council 5 and its affiliates who would have resigned their union membership before *Janus* had they not been compelled to work in an unconstitutional agency shop;

   b. declare that the defendants violated the constitutional rights of Ms. Prokes and her fellow class members by forcing them to pay money to a public-employee union as a condition of their employment;

   c. declare that the defendants violated state tort law by garnishing and redirecting the wages of Ms. Prokes and her fellow class members without obtaining their affirmative, written, and freely given consent, and that any federal or state law or collective-bargaining agreement

<ol type="a" start="4">
<li>that purports to override these protections of state tort law is unconstitutional and without legal effect;</li>
<li>declare Minn. Stat. § 179A.06(3) unconstitutional because it allows public-employee unions to extract "fair-share fees" from nonmembers as a condition of their employment, and permanently enjoin the defendants from enforcing an agency shop or entering into any collective-bargaining that establishes an agency shop;</li>
<li>declare that Article 4, section 1(B) of the collective-bargaining agreement between the County of Scott and the American Federation of State, County, and Municipal Employees, Council No. 5, Local 2440 is unconstitutional, void, and without legal effect;</li>
<li>declare that all provisions in any collective-bargaining agreement negotiated by AFSCME Council 5 or its affiliates that compel the payment of money to the union or its affiliates as a condition of employment are unconstitutional, void, and without legal effect;</li>
<li>order AFSCME Council 5 and its affiliates to refund to every class member an amount equal to the "fair-share fees" that each class members was forced to pay regardless of whether they retained or resigned their union membership;</li>
<li>permanently enjoin AFSCME Council 5 and its affiliates, along with their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with it, from taking or redirecting any type of money from any public employee without first obtaining the employee's affirmative, written, and freely given consent;</li>
<li>award costs and attorneys' fees under 42 U.S.C. § 1988;</li>
</ol>

j. grant all other relief that the Court may deem just, proper, or equitable.

## DEMAND FOR RELIEF—CLAIM NO. 2

41. Ms. Prokes respectfully requests that the court:

   a. certify a separate class of all current and former members of AFSCME Council 5 and its affiliates who had union membership dues taken from their paychecks after communicating their desire to quit the union;

   b. declare that the defendants violated Ms. Prokes's constitutional rights by taking union membership dues from her paycheck after she had informed AFSCME Council 5 that she was resigning her union membership;

   c. declare that the defendants violated state tort law by garnishing and redirecting the wages of Ms. Prokes and her fellow class members without first obtaining their affirmative, written, and freely given consent, and that any federal or state law or collective-bargaining agreement that purports to override these protections of state tort law is unconstitutional, void, and without legal effect;

   d. declare that Article 4, section 1(D) of the collective-bargaining agreement between the County of Scott and the American Federation of State, County, and Municipal Employees, Council No. 5, Local 2440 is unconstitutional, void, and without legal effect, to the extent it requires Scott County to deduct union dues from the paychecks of employees upon the union's request and without regard to whether the employee has "clearly and affirmatively consented" to these payroll deductions;

e. declare that all provisions in collective-bargaining agreements negotiated by AFSCME Council 5 and its affiliates that compel a public employer to deduct union-related fees from an employee's paycheck upon the union's request and without regard to whether the employee has "clearly and affirmatively consented" to these payroll deductions are unconstitutional, void, and without legal effect;

f. order the defendants to refund all union-related fees that they took or re-directed from class members who had previously announced their resignation from the union;

g. order AFSCME Council 5 and its affiliates to pay punitive damages to Ms. Prokes and any other class member who clearly and explicitly instructed the union after *Janus* to stop taking money from their paychecks, and whose instructions were defied or ignored;

h. order the defendants to immediately honor and enforce a public employee's decision to resign from the union and withdraw his or her financial support, regardless of the time of year that the decision is made and regardless of any previous agreement that purports to limit the employee's ability to halt the payment of union-related fees;

i. permanently enjoin AFSCME Council 5 and its affiliates, along with their officers, agents, servants, employees, attorneys, and any other person or entity in active concert or participation with them, from taking or redirecting any type of money from any public employee who has not given his affirmative, written, and freely given consent post-*Janus* to these union-related payments;

j. award costs and attorneys' fees under 42 U.S.C. § 1988;

k. grant all other relief that the Court may deem just, proper, or equitable.

Respectfully submitted.

/s/ Douglas P. Seaton

| | |
|---|---|
| Jonathan F. Mitchell* | Douglas P. Seaton |
| TX Bar No. 24075463 | MN Bar No. 127759 |
| Mitchell Law PLLC | Seaton, Peters & Revnew, P.A. |
| 106 East Sixth Street, Suite 900 | 7300 Metro Boulevard, Suite 500 |
| Austin, Texas 78701 | Minneapolis, Minnesota 55439 |
| (512) 686-3940 (phone) | (952) 921-4604 (phone) |
| (512) 686-3941 (fax) | (952) 896-1704 (fax) |
| jonathan@mitchell.law | dseaton@seatonlaw.com |

* *pro hac vice* application forthcoming

Dated: August 14, 2018

*Counsel for Plaintiffs and the Proposed Class*