## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Linda Hoekman, Mary Dee Buros, and Paul Hanson, on behalf of themselves and others similarly situated, | Case No. 18-cv-01686 (SRN/ECW) |
| Plaintiffs, | **ORDER** |
| v. | |
| Education Minnesota, Anoka Hennepin Education Minnesota, National Education Association, American Federation of Teachers, and Shakopee Education Association, | |
| Defendants. | |
| Thomas P. Piekarski, on behalf of himself and others similarly situated, | Case No. 18-cv-02384 (SRN/ECW) |
| Plaintiff, | |
| v. | |
| AFSCME Council No. 5, | |
| Defendants. | |

Douglas P. Seaton and James V.F. Dickey, Upper Midwest Law Center, 8421 Wayzata Boulevard, Suite 105, Golden Valley, MN 55426; Jonathan Franklin Mitchell, Mitchell Law PLLC, 111 Congress Avenue, Suite 400, Austin, TX 78701; and Talcott Franklin, Talcott Franklin PC, 1920 McKinney Avenue, Seventh Floor, Dallas, TX 75201, for Plaintiffs.

Amanda C. Lynch, Danielle Leonard, Patrick C. Pitts, and Scott A. Kronland, Altshuler Berzon LLP, 177 Post Street, Suite 300, San Francisco, CA 94108; and Cedrick Frazier, David Aron, and Margaret A. Luger-Nikolai, Education Minnesota, 41 Sherburne Avenue, Saint Paul, MN 55103, for the Education Minnesota Defendants.

1

April Pullium, Georgina Yeomans, Jacob Karabell, John M. West, Leon Dayan, and Ramya Ravindran, Bredhoff & Kaiser, PLLC, 805 Fifteenth Street NW, Suite 1000, Washington, D.C. 20005; and Josie Doris Hegarty, AFSCME Council 5, 300 Hardman Avenue South, South Saint Paul, MN 55075, for the AFSCME Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on cross-motions for summary judgment filed in two related cases [18-cv-01686 (hereafter, "the Hoekman matter"), Doc. Nos. 145, 160; 18-cv-02384 (hereafter, "the Piekarski matter"), Doc. Nos. 99, 106]. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **GRANTS** summary judgment in favor of the Defendants in both cases.

## I.   BACKGROUND

In 1977, the United States Supreme Court ruled that public-sector employers and labor unions representing public-sector employees could, consistent with the First Amendment, compel public-sector employees to contribute to a union's collective bargaining costs even if the employees refused to join the union. *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977). Approximately forty years later, the Supreme Court overruled *Abood* and held that such "fair-share" or "agency" fee arrangements violate employees' First Amendment rights. *Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448 (2018).

After the Supreme Court's ruling in *Janus*, Plaintiffs in the instant cases filed class action complaints against their labor unions, seeking the return of fees paid to their unions before and after the *Janus* ruling. In the Hoekman matter, Linda Hoekman, Mary Dee Buros, and Paul Hanson (collectively, "the Hoekman Plaintiffs") are current and former

2

public school teachers who filed suit against Education Minnesota, a Minnesota labor union, and its affiliate organizations (collectively, "the Education Minnesota Defendants"). In the Piekarski matter, Thomas Piekarski is an employee of the Minnesota Department of Transportation who filed suit against the American Federation of State, County, and Municipal Employees, Council No. 5 and its affiliates (collectively, "the AFSCME Defendants").[1]

Prior to *Janus*, the Plaintiffs were faced with the choice whether to join their unions and pay full membership dues, or refuse to join and pay fair-share fees, an arrangement permitted by the Minnesota Public Employment Labor Relations Act ("PELRA"), Minn. Stat. § 179A.01 *et seq*. Some of the Plaintiffs chose to join their unions, and now seek a refund of the "compulsory portion" of the membership dues they paid prior to *Janus*, equal to the fair-share fees that even non-members were required to pay. Other Plaintiffs elected not to join their unions, and seek a refund of the fair-share fees they paid prior to *Janus*. Plaintiffs seek this relief, as well as declaratory and injunctive relief, under 42 U.S.C. § 1983 as well as state tort law.

### A.     Linda Hoekman's Claims

Hoekman has been a teacher employed by Anoka-Hennepin School District 11 since 1997. (Hoekman Dep. [18-cv-01686, Doc. No. 95-3], at 17.) Until approximately 2006,

---

[1] Plaintiffs initially filed these actions with a number of additional co-plaintiffs. Those co-plaintiffs have since withdrawn their claims, leaving the four plaintiffs identified above. (*See* Joint Mem. Op. and Order on Class Certification and *Daubert* Mots. [18-cv-01686, Doc. No. 137], at 3 n.2, 6 n.3.)

Hoekman was a union member and paid full membership dues to the union representing her bargaining unit. (*Id.* at 44-45.) From 2006 to the Supreme Court's decision in *Janus*, Hoekman was a non-union member and paid fair-share fees. (*Id.*; Decl. of Robert Gardner ("Gardner Decl.") [18-cv-01686, Doc. No. 163], at ¶ 14.) After the Supreme Court issued the *Janus* ruling on June 27, 2018, the Education Minnesota Defendants immediately ceased collecting fair-share fees from Hoekman's paychecks, and Hoekman will not pay further fees unless she voluntarily rejoins the union. (Gardner Decl. ¶ 14.) Hoekman seeks a refund of the fair-share fees she paid prior to *Janus*.

### B.   Mary Dee Buros's Claims

Buros is an Education Coordinator employed by Shakopee Public Schools, and became a union member in 1997. (*Id.* ¶ 15; Buros Dep. [18-cv-01686, Doc. No. 95-5], at 14-15.) At her deposition, Buros testified that she did not know that she had a choice between joining the union and paying full membership dues or declining to join the union and paying fair-share fees. (Buros Dep. at 50-59.) Indeed, shortly after starting her employment, a group of fellow teachers told Buros that all the teachers were union members, and that membership was "mandatory." (*Id.* at 58.) However, Buros testified that no union representative ever told her that membership was mandatory. (*Id.* at 60.) In September 2017, Buros read and signed a dues authorization agreement, which provided:

> I agree to submit dues to Education Minnesota and hereby request and voluntarily authorize my employer to deduct from my wages an amount equal to the regular monthly dues uniformly applicable to members of Education Minnesota or monthly service fee, and further that such amount so deducted be sent to such local union for and on my behalf. This authorization shall remain in effect and shall be automatically renewed from year to year, irrespective of my membership in the union, unless I revoke it

by submitting written notice to both my employer and the local union during the seven-day period that begins on September 24 and ends on September 30. Such revocation will take effect on October 1 in the year in which I submit the revocation.

(Gardner Decl., Ex. A ("Buros Dues Authorization"); Buros Dep. at 54-55.) Like the decision to join the union, Buros testified that she did not believe signing the authorization agreement was optional. (Buros Dep. at 54-56.)

Following the *Janus* decision, Buros resigned from the union by email on August 3, 2018. (Gardner Decl. ¶ 18.) Buros's email, addressed to Dale Anderson, the President of the Shakopee Education Association, and Michael Greeley, a payroll specialist at Shakopee Public Schools, stated:

> I'm sending this to let you know that I've made the decision to discontinue my union membership. I am resigning my membership in Education and all of its affiliates, including Shakopee Education Association and the National Education Association, effective immediately.

(Buros Resignation Email [18-cv-01686, Doc. No. 147-1].) Although the Education Minnesota Defendants "processed immediately" Buros's resignation, they continued to deduct membership dues pursuant to the September 2017 dues authorization agreement. (Gardner Decl. ¶¶ 18, 20.) On September 17, 2018, Buros emailed Greeley to ask why the district continued to deduct union dues from her paychecks. (Buros-Greeley Email [18-cv-01686, Doc. No. 147-2].) Greeley informed Buros that teachers can only opt-out of the dues authorization between September 24 and September 30 each year, and that she would need to contact Anderson during that window. (*Id.*) On September 25, 2018, Buros submitted a dues revocation request, and the Education Minnesota Defendants ceased

deducting membership dues on October 1, 2018. (Gardner Decl. ¶¶ 19-20.) No further dues will be deducted from Buros's paychecks unless she chooses to rejoin the union. (*Id.* ¶ 22.)

Buros seeks to recover the "compulsory portion" of the membership dues she paid prior to *Janus*—that is, the portion of her dues that she would have had to pay even if she had declined union membership. This amount is equal to the fair-share fees that non-members were required to pay at that time. In addition, Buros seeks to recover all dues taken from her paychecks after her August 3, 2018 resignation from the union.

### C.    Paul Hanson's Claims

Hanson is a teacher employed by Centennial School District 12. (Hanson Dep. [18-cv-01686, Doc. No. 95-4], at 57.) Hanson has never been a union member, but was required to pay fair-share fees prior to the *Janus* decision. (*Id.* at 14-15.) After the Supreme Court issued the *Janus* ruling on June 27, 2018, the Education Minnesota Defendants immediately ceased collecting fair-share fees from Hanson's paychecks, and Hanson will not pay further fees unless he voluntarily rejoins the union. (Gardner Decl. ¶ 15.) Hanson seeks a refund of the fair-share fees he paid prior to *Janus*.

### D.    Thomas Piekarski's Claims

Piekarski is an employee of the Minnesota Department of Transportation. (Decl. of Diane Johnston ("Johnston Decl.") [18-cv-02384, Doc. No. 109-1], at ¶ 3.) Piekarski became a union member in 2009, and began paying full membership dues. (Piekarski Dep. [18-cv-02384, Doc. No. 109-2], at 24-26.) In 2015, Piekarski briefly served as union president, but resigned over his concerns about the union's "waste of funds." (*Id.* at 38, 44.) On October 3, 2017, Piekarski emailed union representatives and requested that they

switch his paycheck deductions to fair-share fees rather than full membership dues. (Oct. 2017 Email [18-cv-02384, Doc. No. 101-1].) Thereafter, Piekarski fell into a protracted disagreement with union representatives, wherein the union representatives argued that Piekarski could not switch to fair-share fees without submitting a signed document stating his request, and Piekarski protested that he had already sent an electronically signed email, along with a hand-signed copy of his email, and that that should suffice. (*See* Mem. in Supp. of Pl.'s Mot. for Summ. J. [18-cv-02384, Doc. No. 100], at 1-8.) Ultimately, Piekarski sent a signed document on August 13, 2018, in which he requested to convert to fair-share fees and demanded that the request be backdated to October 3, 2017. (Johnston Decl., Ex. C.) Because Piekarski's August 2018 request post-dated *Janus*, the AFSCME Defendants ceased all deductions from Piekarski's paychecks after receiving the request. (*Id.* ¶ 12.) AFSCME has not found any copies of the signed document Piekarski allegedly submitted in October 2017, and Piekarski has not submitted a copy of that document to this Court. (*Id.* ¶ 10.)

Although the union did not receive a signed request from Piekarski until August 2018, it ultimately honored Piekarski's request to back-date the revocation of his fee authorization. In June 2019, AFSCME Council 5 sent Piekarski a check refunding all fees deducted from his paychecks after October 3, 2017—including the fair-share fees he would have been required to pay prior to *Janus*—plus interest calculated at four percent per annum. (*Id.* ¶ 13.) Piekarski refuses to cash the check, however, because he would "feel that [he is] dropping out of the lawsuit," and because cashing the check "violates [his] attorneys and this class action suit." (Piekarski Dep. at 88.)

Like Buros, Piekarski seeks to recover the "compulsory portion" of the membership dues he paid prior to *Janus*. Piekarski also seeks (1) a refund of the difference between full membership dues and the fair-share fees he would have paid between October 3, 2017 and the *Janus* decision if the AFSCME Defendants had processed his initial revocation request, and (2) a refund of all fees deducted from his wages after *Janus*.

In addition to the requested relief individually summarized above, all Plaintiffs seek individual and class-wide declaratory and injunctive relief, as well as attorneys' fees and costs. (*See* Hoekman Am. Compl. [18-cv-01686, Doc. No. 35], at ¶¶ 59-61; Piekarski Am. Compl. [18-cv-02384, Doc. No. 40], at ¶ 89.) This Court previously denied class certification, and therefore only the Plaintiffs' individual claims remain at this stage. (Joint Mem. Op. and Order on Class Certification and *Daubert* Mots. [18-cv-01686, Doc. No. 137].)

## II.    DISCUSSION

### A.    Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it may affect the outcome of the lawsuit." *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 812 F.3d 701, 707 (8th Cir. 2016). And a factual dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, the Court must view the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the

nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the moving party bears the burden of establishing the lack of a genuine issue of fact, the party opposing summary judgment may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation marks omitted). Moreover, summary judgment is properly entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## B.   Hoekman and Hanson's Claims for a Refund of Pre-*Janus* Fair-Share Fees

The Court begins its analysis with Hoekman and Hanson's claims for a refund of all fair-share fees they paid prior to *Janus*. Hoekman and Hanson assert their claims under § 1983 and state tort law. With respect to § 1983, the Education Minnesota Defendants argue that their good faith reliance on PELRA and forty years of Supreme Court precedent following *Abood* establish an affirmative defense to § 1983 liability. With respect to Hoekman and Hanson's conversion claims, the Education Minnesota Defendants argue that Hoekman and Hanson have not raised a genuine dispute of material fact on the elements of conversion.

In a decision filed contemporaneously with this Order, this Court held that private actors who act in good faith reliance on a state statute and Supreme Court case law holding

9

that statute constitutional have an affirmative defense to § 1983 liability. *See Brown v. Am. Fed'n of State, Cty. & Mun. Emps., Council No. 5*, 20-cv-01127 (SRN/ECW) (D. Minn. Feb. 12, 2021). The Court reasoned that such a defense is analogous to those available in common law malicious prosecution and abuse of process cases at the time § 1983 was enacted, and fulfills the important policy goals—including "principles of equality and fairness"—that the Supreme Court has repeatedly suggested justify an affirmative defense in private-actor § 1983 cases. *Id.*; *see, e.g.*, *Danielson v. Inslee*, 945 F.3d 1096, 1098 (9th Cir. 2019), *cert. denied*, No. 19-1130, 2021 WL 231555 (U.S. Jan. 25, 2021) ("[T]he fundamental premise for section 1983 liability against the Union is its alleged abuse of processes authorized by Washington law . . . toward unconstitutional ends."); *Diamond v. Pennsylvania State Educ. Ass'n*, 972 F.3d 262, 271 (3d Cir. 2020) ("It is fair—and crucial to the principle of rule of law more generally—that private parties like the Unions should be able to rely on statutory and judicial authorization of their actions without hesitation or fear of future monetary liability."); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 942 n.23 (1982); *Wyatt v. Cole*, 504 U.S. 158, 159 (1992). The Court incorporates its analysis in *Brown* by reference.

Like every court to consider the issue, the Court finds that the good faith defense bars Hoekman and Hanson's § 1983 claims for a refund of fair-share fees paid prior to *Janus*. *E.g.*, *Janus v. Am. Fed'n of State, Cty. & Mun. Emps., Council 31; AFL-CIO*, 942 F.3d 352, 364 (7th Cir. 2019) ("*Janus* Remand"); *Danielson*, 945 F.3d at 1098; *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 389 (6th Cir. 2020), *cert. denied*, No. 20-422, 2021 WL 231559 (U.S. Jan. 25, 2021); *Wholean v. CSEA SEIU Local 2001*, 955 F.3d 332, 334 (2d Cir. 2020);

*Diamond*, 972 F.3d at 271; *Doughty v. State Emps.' Ass'n of New Hampshire, SEIU Local 1984, CTW, CLC*, 981 F.3d 128, 133 (1st Cir. 2020). PELRA permitted the Education Minnesota Defendants to collect fair-share fees from Hoekman and Hanson, and PELRA's constitutionality was supported by the Supreme Court's decision in *Abood* and forty years of precedent thereafter.[2] Moreover, there is no evidence in the record indicating that the Education Minnesota Defendants acted with malice, with the knowledge that PELRA was unconstitutional, or otherwise acted in bad faith. Therefore, the Education Minnesota Defendants have established the good faith affirmative defense to Hoekman and Hanson's § 1983 claims.

Hoekman and Hanson argue that even if the Education Minnesota Defendants' good faith shields them from damages under § 1983, they still must return the funds (now understood to be) unconstitutionally taken. This argument presupposes that Hoekman and Hanson's claims are for equitable restitution of the property taken from them, rather than compensatory damages for a constitutional injury. But their *Janus* claims do not sound in restitution, and even if they did, the equities do not favor requiring the Education Minnesota Defendants to refund fees they collected and expended in reliance on PELRA and *Abood*. As the Ninth Circuit aptly explained:

---

[2] The Court notes that the Supreme Court had, as early as 2012, begun to express "misgivings" about *Abood*. *See Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2484 (2018) (citing *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298 (2012); *Friedrichs v. California Teachers Ass'n*, 136 S. Ct. 1083 (2016)). But "[t]he Rule of Law requires that parties abide by, and be able to rely on, what the law *is*, rather than what the readers of tea-leaves predict that it might be in the future." *Janus* Remand, 942 F.3d at 366.

Plaintiffs' constitutionally cognizable injury is the intangible dignitary harm suffered from being compelled to subsidize speech they did not endorse. It is *not* the diminution in their assets from the payment of compulsory agency fees. Accordingly, Plaintiffs seek compensatory damages, not true restitution, when they pray for a monetary award in the amount of the agency fees they paid to the Union. The labeling of the relief sought in restitutionary terms does not change the underlying nature of Plaintiffs' claim.

Even accepting Plaintiffs' restitutionary premise, the equities do not weigh in favor of requiring a refund of all agency fees collected pre-*Janus*. The Union bears no fault for acting in reliance on state law and Supreme Court precedent. It collected and spent fees under the assumption—sanctioned by the nation's highest court—that its conduct was constitutional. And the Union provided a service to contributing employees in exchange for the agency fees it received.

*Danielson*, 945 F.3d at 1102–03. Other courts have similarly rejected plaintiffs' attempts to circumvent the good faith defense by characterizing their *Janus* claims as restitutionary. *See, e.g.*, *Lee*, 951 F.3d at 391; *Mooney v. Illinois Educ. Ass'n*, 942 F.3d 368, 371 (7th Cir. 2019), *cert. denied*, No. 19-1126, 2021 WL 231650 (U.S. Jan. 25, 2021). In short, a *Janus* claim is a legal one, and Hoekman and Hanson's efforts to characterize the claim as restitutionary cannot circumvent the Education Minnesota Defendants' good faith defense.

Hoekman and Hanson also argue that even if the Education Minnesota Defendants can assert a good faith defense, in order to establish that defense they must show that they complied with *Abood's* restrictions on the use of fair-share fees. But their Amended Complaint does not allege that the Education Minnesota Defendants failed to comply with *Abood*, and Hoekman and Hanson have not identified any case which made compliance with *Abood* an element of the good faith affirmative defense. To the contrary, other courts confronted with Hoekman and Hanson's argument have soundly rejected it. *E.g.*, *Danielson*, 945 F.3d 1096, 1104–05 ("Plaintiffs alleged in their complaint only that the

12

Union's collection of compulsory agency fees, as a general matter, violated their rights under the First and Fourteenth Amendments. . . . Because Plaintiffs' claims arise from the Union's reliance on *Abood*, not allegations that the Union flouted that authority, the Union need not show compliance with *Abood*'s strictures to assert successfully a good faith defense.").

Finally, Hoekman and Hanson assert a claim for common law conversion, to which good faith is generally not a defense. They argue that the Supreme Court's *Janus* ruling is retroactive, and therefore the statutes authorizing the Education Minnesota Defendants to collect fair-share fees were void. The Court assumes, without deciding, that *Janus* was indeed retroactive.[3] Even with that assumption, the Education Minnesota Defendants' conduct does not amount to conversion. Under Minnesota law, conversion is "an act of willful interference with [the personal property of another], done[] without lawful justification, by which any person entitled thereto is deprived of use and possession" of that property. *Christensen v. Milbank Ins. Co.*, 658 N.W.2d 580, 585 (Minn. 2003) (quoting *Larson v. Archer–Daniels–Midland Co.*, 32 N.W.2d 649, 650 (Minn. 1948)). Setting aside the difficult question of whether Minnesota law treats intangible money deducted from an

---

[3] *See Danielson*, 945 F.3d at 1099 ("[L]ike the Seventh Circuit, we find it unnecessary to 'wrestle the retroactivity question to the ground.' The Supreme Court has made clear that right and remedy must not be conflated, and that retroactivity of a right does not guarantee a retroactive remedy." (citation omitted)); *Wholean*, 955 F.3d at 336 ("[W]e note that nothing in *Janus* suggests that the Supreme Court intended its ruling to be retroactive. . . .").

employee's paycheck as property subject to conversion,[4] the Education Minnesota

Defendants' conduct was not done "without lawful justification." To the contrary, the fair-

share fee arrangement was explicitly permitted by PELRA. Minn. Stat. § 179A.06, Subd.

3. And, "[w]hen legislation and the common law conflict, legislation governs 'because it

is the latest expression of the law.'" *Anderson v. Federated Mut. Ins. Co.*, 465 N.W.2d 68,

70 (Minn. Ct. App. 1991) (citation omitted).

Although Hoekman and Hanson urge the Court to treat PELRA as though it never

existed, in light of *Janus's* holding that fair-share fee arrangements are unconstitutional,

the Court declines to retroactively create tort liability under Minnesota common law for

conduct expressly authorized by a Minnesota statute. As the Supreme Court has held, "[t]he

actual existence of a statute, prior to [a determination that it is unconstitutional], is an

operative fact and may have consequences which cannot justly be ignored. . . . [I]t is

manifest from numerous decisions that an all-inclusive statement of a principle of absolute

retroactive invalidity cannot be justified." *Chicot Cty. Drainage Dist. v. Baxter State Bank*,

308 U.S. 371, 374 (1940). Moreover, other courts to consider this very argument have

reached the same conclusion. The District Court for the Central District of California

persuasively explained:

> [T]here can be no common law liability for conduct authorized by state
> statute. . . . *Janus* does not change the fact that [a state statute] displaced any
> state common law tort claims that could have been brought with regard to
> [agency fees] collected prior to *Janus*. Plaintiffs argue that statutes

---

[4] *See TCI Bus. Capital v. Five Star Am. Die Casting*, 890 N.W.2d 423, 428 (Minn.
Ct. App. 2017) ("TCI's [conversion] claim rests on the premise that money in an intangible
form is property. That premise is without precedent in Minnesota law.").

authorizing the collection of agency fees are to be treated as though they never existed. However, the Court cannot ignore the fact that the Union Defendants' collection of [agency fees] prior to *Janus* was authorized by [a] state statute that was constitutional under controlling precedent. The court cannot now go back and impose tort liability under common law for that conduct.

*Babb v. California Teachers Ass'n*, 378 F. Supp. 3d 857, 877 (C.D. Cal. 2019) (internal quotation marks and citations omitted).

In sum, the Court finds that there are no genuine disputes of material fact, and the Education Minnesota Defendants are entitled to judgment as a matter of law on Hoekman and Hanson's § 1983 and state law claims for a refund of their pre-*Janus* fair-share fees.

### C. Buros and Piekarski's Claims for a Refund of the "Compulsory Portion" of Pre-*Janus* Membership Dues

The Court next turns to Buros and Piekarski's claims for a refund of the "compulsory portion" of their membership dues—that is, the portion of their dues, equal to fair-share fees, that they would have had to pay even if they had not joined their unions. Buros and Piekarski rely principally on the *Janus* Court's declaration that:

Neither an agency fee **nor any other payment to the union** may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

*Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2486 (2018) (emphasis added). However, *Janus* addressed the First Amendment rights of non-union members, not those who chose to join the union (and receive the full benefits of

membership) rather than pay fair-share fees (without the full benefits of membership). Indeed, the above-quoted language states that a union may not collect "any other payment . . . *from a nonmember's wages*," absent affirmative consent. *Id.* (emphasis added). Moreover, the Court noted that "States can keep their labor-relations systems exactly as they are—only they cannot force nonmembers to subsidize public-sector unions." *Id.* at 2485 n.27. Thus, as this Court has previously held, "[n]othing in *Janus* suggests that its holding, which expressly pertains to union-related deductions from 'a nonmember's wages,' should apply to similar collections from a *union member's* wages." *Loescher v. Minnesota Teamsters Pub. & Law Enf't Emps.' Union, Local No. 320*, 441 F. Supp. 3d 762, 773 (D. Minn. 2020), *appeal dismissed sub nom. Loescher v. Minnesota Teamsters Pub. & Law Enf't*, No. 20-1540, 2020 WL 5525220 (8th Cir. May 15, 2020).

The Court therefore finds that *Janus* does not support Buros and Piekarski's § 1983 claims for the refund of the "compulsory portion" of the membership dues they voluntarily agreed to pay.[5] (*See* Buros Dues Authorization; Johnston Decl., Ex. B (Piekarski's payroll deduction authorization).) Other courts to consider a union member's *Janus*-based claims have reached the same conclusion. *E.g.*, *Creed v. Alaska State Emps. Ass'n/AFSCME Local 52*, 472 F. Supp. 3d 518, 525–26 (D. Alaska 2020); *Hendrickson v. AFSCME Council 18*, 434 F. Supp. 3d 1014, 1023 (D.N.M. 2020). Moreover, even if *Janus* supported Buros and

---

[5] Although Buros testified that she believed union membership was "mandatory," there is no evidence in the record tying that belief to the actions of her union representatives, and she does not appear to argue that her belief rendered her dues authorization unenforceable. (Buros Dep. at 50-59.)

16

Piekarski's claims to the "compulsory portion" of their membership dues under § 1983, such claims would still be subject to a good faith defense. *See Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996, 1008 (D. Alaska 2019) ("Given that the union members' claim is also based upon pre-*Janus* collection of fair-share fees, the court concludes that the good-faith defense applies here as well.").

Finally, Piekarski also argues that he is entitled to the "compulsory portion" of his membership dues under restitutionary principles as well as state tort law. As the Court explained in the context of Hoekman and Hanson's claims, however, Piekarski's *Janus* claim is one for compensatory damages, not restitution. With respect to Piekarski's state law claim, Piekarski does not explain how the AFSCME Defendants' deduction of membership dues—which Piekarski voluntarily authorized—constitutes conversion. Rather, Piekarski's opening memorandum focuses on defeating the AFSCME Defendants' invocation of the good faith defense, and his response memorandum does not address the merits of his conversion claim, either. (*See* Mem. in Supp. of Pl.'s Mot. for Summ. J. [18-cv-02384, Doc. No. 100]; Pl.'s Response [18-cv-02384, Doc. No. 111].) Because Piekarski authorized the deduction of membership dues from his paychecks, the AFSCME Defendants are entitled to summary judgment on his conversion claim.

In sum, the Court finds that there is no genuine dispute of material fact, and the Education Minnesota Defendants and the AFSCME Defendants are entitled to judgment as a matter of law on Buros and Piekarski's § 1983 claims and state law claims for a refund of the "compulsory portion" of their membership dues.

### D.   Buros's Claim for a Refund of Post-Resignation Membership Dues

Next, the Court considers Buros's claim for a refund of the dues she paid between her August 3, 2018 resignation from the union and October 1, 2018, when her dues authorization ended. Buros first argues that the September 2017 dues authorization agreement she signed—which authorized the Education Minnesota Defendants to deduct membership dues through October 1, 2018 even if Buros resigned her membership before then—is not a "contract" because it lacks consideration. Even if it were, Buros argues, the authorization does not meet *Janus's* requirements for a waiver of a non-union member's First Amendment right not to financially support her union.

But by signing the dues authorization form, Buros continued to receive the privileges and benefits of membership in her union, which were not available to fair-share fee payors. For example, membership status permitted Buros to "participate in internal union affairs and attend union-sponsored professional development workshops," and it entitled her to professional liability coverage, discounts on insurance and financial planning services, and "legal representation in work-related matters not covered by the collective bargaining agreement." (Gardner Decl. ¶ 9.) That the dues authorization form— which was captioned "Membership Renewal"—did not itself spell out all the benefits Buros would receive from her membership does not entail that the dues authorization agreement was without consideration. *Cf. Creed*, 472 F. Supp. 3d at 525–26 ("[Plaintiffs'] contention that the dues authorization form provides no consideration in return for the employee's agreement to join the union and pay dues is simply wrong. Although formation of a contract requires mutual consideration, plaintiffs received access to union membership

rights and benefits in exchange for agreeing to join the union and pay dues." (citation omitted)).

Moreover, *Janus* does not invalidate Buros's agreement to pay union dues until October 1, 2018, "irrespective of [her] membership in the union." (Buros Dues Authorization.) Nor must the dues authorization agreement satisfy *Janus's* waiver requirements. As explained previously, *Janus* did not address a union member's First Amendment rights. And the courts that have considered claims like Buros's have soundly rejected them. *E.g.*, *Fisk v. Inslee*, 759 F. App'x 632, 633 (9th Cir. 2019) ("Appellees' deduction of union dues in accordance with the membership cards' dues irrevocability provision does not violate Appellants' First Amendment rights. Although Appellants resigned their membership in the union and objected to providing continued financial support, the First Amendment does not preclude the enforcement of 'legal obligations' that are bargained-for and 'self-imposed' under state contract law." (quoting *Cohen v. Cowles Media Co.*, 501 U.S. 663, 668–71 (1991))); *Belgau v. Inslee*, No. 18-5620 RJB, 2018 WL 4931602, at *5 (W.D. Wash. Oct. 11, 2018) ("Plaintiffs' assertions that they didn't knowingly give up their First Amendment rights before *Janus* rings hollow. *Janus* says nothing about people [who] join a Union, agree to pay dues, and then later change their mind about paying union dues.").

Buros also argues that she was entitled to unilaterally rescind the dues authorization agreement pursuant to *NLRB v. Penn Cork & Closures, Inc.*, 376 F.2d 52 (2d Cir. 1967). There, union members had signed checkoff authorizations, much like Buros's, which required them to pay annual union dues unless they cancelled the authorization within a

several-day annual window. *Id.* at 54. Later, the employees voted to rescind their collective bargaining agreement's union security clause, which required all employees to join the union (and therefore pay membership dues), and some employees attempted to cancel their authorizations outside of the revocation window. *Id.* Nonetheless, the employer continued to deduct union dues from those employees' pay, pursuant to the authorizations. *Id.* In enforcing the National Labor Relations Board's finding that the employer's conduct constituted an unfair labor practice, the court reasoned that "[t]he Board acted within the broad authority committed to it in the area of labor-management relations . . . in concluding . . . that rescission of the union security clause . . . should also work a rescission of checkoffs authorized by employees because of the union security provisions." *Id.* at 56.

The *Penn Cork* case is inapposite. The court there dealt with a matter of federal labor law significantly distinct from the question facing this Court—namely, whether *Janus* affords employees a First Amendment right to immediately revoke dues authorizations that provided for a limited annual revocation window. Moreover, the effect of the *Janus* decision is not similar to the effect of the *Penn Cork* employees' vote to rescind the union security clause in their collective bargaining agreement. That vote was designed to release the employees from the obligation to be union members; because the requirement to pay union dues flowed from that obligation, the employees' vote to rescind the obligation to be union members could be fairly characterized as releasing the employees from their obligations to pay union dues as well. By contrast, as explained above, *Janus* did not purport to change union members' rights and obligations, and indeed permitted the states to "keep their labor-relations systems exactly as they are"—thus preserving contract

requirements obligating union members to temporarily pay union dues even after resigning from the union. *Janus*, 138 S. Ct. at 2485 n.27; *see Fisk*, 759 F. App'x at 633 ("[T]he First Amendment does not preclude the enforcement of 'legal obligations' that are bargained-for and 'self-imposed' under state contract law." (quoting *Cohen*, 501 U.S. at 668–71)).

Finally, Buros argues that since the Education Minnesota Defendants have "monopoly power" over employee representation, they cannot place "unreasonable obstacles"—such as a limited dues revocation window—in the path of employees' rights to terminate their association with the union. Buros cites no case law, however, in support of her argument that the seven-day annual revocation window provided for by the authorization agreement is unenforceable, and other courts have upheld similar systems post-*Janus*. *See, e.g.*, *Fisk*, 759 F. App'x at 634 (fifteen-day window); *Creed*, 472 F. Supp. 3d at 525 (ten-day window).

Thus, the Court finds that there are no genuine disputes of material fact, and the Education Minnesota Defendants are entitled to judgment as a matter of law on Buros's claim for reimbursement of union dues between her August 2018 resignation and October 1, 2018.

### E.    Piekarski's Additional Claims

The Court next considers Piekarski's claims 1) that because he attempted to resign from the union on October 3, 2017, he is entitled to a refund of the difference between the full membership dues he paid and the fair-share fees he would have paid had his resignation been processed, and 2) that he is entitled to a refund of all money that the AFSCME Defendants deducted from his wages after the *Janus* decision was announced. The

AFSCME Defendants argue that these claims are moot because, in June 2019, AFSCME Council 5 sent Piekarski a check refunding all fees deducted from his paychecks after October 3, 2017—including the fair-share fees he would have been required to pay prior to *Janus*—plus interest calculated at four percent per annum. (Johnston Decl. ¶ 13.) Piekarski has not deposited that check, because he would "feel that [he is] dropping out of the lawsuit," and because cashing the check "violates [his] attorneys and this class action suit." (Piekarski Dep. at 88.)

"A case becomes moot when it becomes impossible for the court to grant any effectual relief." *Robinson v. Pfizer, Inc.*, 855 F.3d 893, 897 (8th Cir. 2017). Despite the union's refund of *all* the fees Piekarski paid after his attempted resignation from the union, Piekarski argues that his claims are not moot for two reasons. First, Piekarski characterizes the refund check as a settlement offer, and argues that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 165 (2016), *as revised* (Feb. 9, 2016). Second, Piekarski asserts that despite the refund, there is still relief for the Court to grant.

The Court finds that Piekarski's claims are moot. With respect to Piekarski's first argument, the refund check was not a settlement offer—it was an unconditional refund of Piekarski's disputed union dues, with interest. There is no evidence that the AFSCME Defendants conditioned the refund on Piekarski's waiver of his claims, or any other demand. With respect to Piekarski's second argument, Piekarski identifies four classes of relief that maintain a live controversy in this case: (1) damages representing the difference between the full membership dues Piekarski paid and the fair-share fees he would have

paid had his attempted October 2017 resignation been effective; (2) a refund of all dues deducted from his paychecks following the *Janus* decision in June 2018; (3) class-wide relief on behalf of the putative class; and (4) costs and attorneys' fees. (Pl.'s Response [18-cv-02384, Doc. No. 111], at 3-4.) But the refund check provides the first and second classes of relief. In addition, following this Court's denial of class certification, Piekarski cannot obtain class-wide relief. (*See* Joint Mem. Op. and Order on Class Certification and *Daubert* Mots. [18-cv-01686, Doc. No. 137].) And Piekarski's claim for costs and attorneys' fees is insufficient by itself to maintain a live case or controversy. *See Neighborhood Transp. Network, Inc. v. Pena*, 42 F.3d 1169, 1172 n.3 (8th Cir. 1994) ("[A] claim for attorneys' fees is generally not sufficient to save a case from being moot.").

Thus, as this Court held in *Loescher*, "[t]his is not a controversy." *Loescher v. Minnesota Teamsters Pub. & Law Enf't Emps.' Union, Local No. 320*, 441 F. Supp. 3d 762, 771 (D. Minn. 2020), *appeal dismissed sub nom. Loescher v. Minnesota Teamsters Pub. & Law Enf't*, No. 20-1540, 2020 WL 5525220 (8th Cir. May 15, 2020). There, the plaintiff was a union member and, after the *Janus* decision was announced, attempted to resign from the union. *Id.* at 770. Her employer initially continued to deduct dues from her paycheck pursuant to a dues authorization agreement that could not be revoked except within a fifteen-day annual revocation window. *Id.* Ultimately, the union refunded the plaintiff's dues notwithstanding the authorization agreement, but the plaintiff returned the check and filed suit. *Id.* This Court reasoned that "Loescher seeks to recover in Count One what Local Union 320 already provided. She does not allege any injury for this Court to redress." *Id.* As with the plaintiff in *Loescher*, AFSCME Council 5 has already provided

23

the refund Piekarski requests that this Court grant,[6] and the Court therefore finds that Piekarski's claims for that refund are moot.

### F.     All Plaintiffs' Claims for Prospective Declaratory and Injunctive Relief

Finally, the Court briefly addresses Plaintiffs' requests for prospective declaratory and injunctive relief. Plaintiffs seek various prospective remedies, including declarations that they cannot be compelled to pay fair-share fees without affirmative consent as required by *Janus* and an injunction barring the Defendants from violating *Janus* in the future. Because the Defendants have ceased deducting fair-share fees from Plaintiffs' paychecks and have averred that Plaintiffs will not be required to pay union fees unless they voluntarily rejoin their unions, Plaintiffs do not have standing for prospective relief. *See Loescher*, 441 F. Supp. 3d at 769. Accordingly, the Court grants summary judgment in favor of the Defendants as to the Plaintiffs' claims for prospective declaratory and injunctive relief as well.

### III.   CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

---

[6] To be sure, the union in *Loescher* refunded the plaintiff's fees *before* the plaintiff filed suit, while the AFSCME Defendants refunded Piekarski's fees during this litigation. But the timing of the refund does not alter this Court's conclusion that the check was not an "unaccepted settlement offer," *Campbell-Ewald Co.*, 577 U.S. at 165, and because "an actual controversy must exist at all stages of review," the timing of the refund does not alter the Court's conclusion that Piekarski's claims are now moot. *Robinson*, 855 F.3d at 896–97 ("[I]f intervening circumstances moot the controversy, the case must be dismissed.").

1. The Hoekman Plaintiffs' Motion for Summary Judgment [18-cv-01686, Doc. No. 145] is **DENIED**;

2. The Education Minnesota Defendants' Cross-Motion for Summary Judgment [18-cv-01686, Doc. No. 160] is **GRANTED**;

3. Plaintiff Piekarski's Motion for Summary Judgment [18-cv-02384, Doc. No. 99] is **DENIED**; and

4. The AFSCME Defendants' Cross-Motion for Summary Judgment [18-cv-02384, Doc. No. 106] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: February 12, 2021                                    s/Susan Richard Nelson
                                                            SUSAN RICHARD NELSON
                                                            United States District Judge